Battle, J.
 

 The record in the present casé brings fairly before us, for revision, the order of the justices of the county court of Wake, made at the last February Term, by which they granted a license to the defendant, authorizing him to
 
 *298
 
 retail spirituous liquors for one year within the limits of the city of Raleigh; which order we have decided in another case, against the same defendant, cannot be reviewed by the writ of
 
 oeriiorari.
 
 If the license granted by the said justices be for the reasons assigned by the plaintiffs “ void and of no effect,” then the defendant is liable to them for the penalty claimed in this suit under the plain .provisions of the 5th section of the act of 1850, entitled an act to amend an act passed in the year 1803, entitled “ an act for the government of the city of Raleigh.”
 

 The plaintiffs contend that the grant'of the license in question was void, because it was made without the permission of the board of commissioners then in existence; and the question is whether the persons who composed the board prior to the 15th January, 1855, and whose term of office expired on that day, or those who succeeded them and who therefore composed the board when the grant was made, were the board of commissioners whose permission 'was to be first had, before the grant could be lawfully made within the meaning of the act referred to.
 

 We deem the question an important one, affecting, as it does, the power of the justices of the county court of Wake, the rights of the defendants and the good and orderly government of the city of Raleigh, and we have therefore given it our attentive consideration. The result of our reflections is that the board of commissioners, whose term of office had expired before the sitting of the county court, had no authority to give the permission upon which the justices acted, and that consequently their order, granting a license to the defendant, was void. The reasons which have brought us to this conclusion, we will now proceed to state.
 

 The act of 1850 was passed, as appears from its title, to amend the act of 1803 ; and may, therefore, legitimately receive aid from it, whenever such aid may be necessary to ascertain its meaning. The fourth section of the amending act authorizes the commissioners of the city
 
 “
 
 to levy and collect a tax, not exceeding twenty-five dollars on every billiard table, nine
 
 *299
 
 or ten pin alley, victualing house or restaurant, and upon every permission granted to retail spirituous liquors within the limits of the said city.” The act does not prescribe in express terms, whether these taxes may be levied and collected annually, semi-annually, or bi-ennially. How then are the city authorities to know how often they have the power to assess and collect them ? The answer is to be found by referring to the 8th section of the.act of 1803, by which the taxing power is conferred upon them in the following words: “ In order to raise a sufficient fund for repairing the streets of the city, and for effecting other useful and necessary purposes, the said commissioners are hereby authorized to lay,, levy and collect annually a tax.” &c. We are then satisfied beyond a doubt, that the taxes authorized by act of 1850, are to be levied and collected
 
 cmnually.
 
 But when is the tax upon permissions to retail to be paid ? As to that, the act of 1803 cannot furnish any information, because the grant of a permission to retail is not of a nature to be listed like the taxable property and polls therein specified. The tax then may, in the absence of any provision to the contrary, be demanded when the permission is given. And it is reasonable that it should be so, because the permission may be applied for and obtained at any time during the year, with a view to apply for a license from the justices of the county court, provided the members of the board which gave it, shall continue in office until the court shall sit. Such too is the public law relative to the payment of the tax on the license which the sheriff receives as a part of the public revenue. (See 1 Eev. Stat'. ch. 102, sec. 20, and Act of 1854, ch. 3T, sec. 23, par. 14.) And such we learn is the practical construction which has been placed upon the said 4th section of the act of 1850. Having thus ascertained that the commissioners of the city of Baleigh have the power to levy and collect a tax upon the grant of their permission to retail every year, and not oftener, and to demand payment when the grant is made, we are prepared to understand the meaning of the Legislature in the enactment of the 5th section of the act. The words are, “ that it shall not be lawful for the justices of
 
 *300
 
 the county court of Wake, to grant any license to retail spirituous liquors within the limits of the city of Raleigh, without the permission of the -board of commissioners first had, and if any license shall be granted without such permission in writing, attested by the clerk of the board of commissioners first filed with the clerk of said county court, such license shall be void and of no effect.” The question is, what board ? — one, the-members composing which had gone out of office when the license was granted ? or one whose members are then in official existence? “The commissioners of the city of Raleigh” are a political corporate body having perpetual succession ; but that succession is.to be kept up by the annual election of competent persons to fill the office. The board of commissioners is the name by which they are more particularly called when met for the transaction of official business. Thát too is a body having perpetual succession, but the members composing it change every year; for though the same individuals may be re-elected for successive years, yet they, have to qualify, by taking the prescribed oaths, before they can act; just as any other persons would have to do. Hence we find the distinction between the
 
 “
 
 existing” and a “ former board,” as will be seen by a reference to the 16th section of the act of 1803.
 

 It follows from this, that all such taxes as are
 
 annual,
 
 can be levied and collected once only, during the official existence of any one^ set of members composing the board of commissioners. We have seen that the board, or the members composing the board, which gives the permission to retail, may demand an immediate payment of the tax. The power to give the permission and the power to tax are thus shown to be co-extensive and must-therefore begin and terminate at the same time.
 

 Now, let us see how all this applies to the case before us. No person will deny that the members who come into office, and compose, what we will call a new board, in the month of January in any year, have power to give a permission to one who wishes to apply at the next succeeding county court for-a license to retail within the limits of the city, and to demand the payment of the tax for the same. If so, their power, be
 
 *301
 
 ing a limited and special power, as in its nature must be, is exhausted and gone. As to that, the board is
 
 functus
 
 officio, and any further attempt to exercise the power, must be a nullity. But perhaps it may be said, that it does not appear that the board which granted the permission in the present case had ever before exercised the power, and that therefore the grant was valid. The clear and decisive answer is, that the Legislature did not confer the same power, which is necessarily limited to one year, upon two sets of commissioners to be exercised during the same year. Yet such would be the case if the action of the members who composed the board of 1854 could be sustained. Their power to grant a permission to the defendant for a license, and to tax it, commenced with their entry into office. They did, or might have authorised him to apply for a license at the February term, 1854, and for their permission have made him pay a tax. Their successors must have- the same power for 1855. And unless the power of the former set be confined to their official term of existence, it must necessarily trench upon that of the latter, which the Legislature certainly never intended. But it may be argued that the defendant was, for certain reasons satisfactory to himself, willing to take and pay for a permission from the board of 1854, and that he might, if he choose, waive the objection to the payment of the double tax. The réply is, that the question is one of
 
 ¡power
 
 in the board, and his consent cannot confer what the Legislature has withheld.
 

 "Viewing the case in every light in which it can be presented, it appears to us that the. late board of. commissioners did an act which amounted to the exercise of power, which properly belonged to their successors, and not to them, and that therefore, their act was null and void.
 

 In favor of this construction too, an obvious policy may be urged. It is that the license, which the court may grant, must be in force, for a part, greater or less of the time during which the members of the board who gave the permission are in office; and they will, of course, feel a deeper interest in seeing that the.retailer does not abuse his privilege.
 

 
 *302
 
 The objections to the sufficiency of the warrant are all untenable.
 

 It sets forth every fact necessary to show that the penalty given by the act, had been incurred. It states that thereby an action had accrued to the “ commissioners of the city of Raleigh,” which is the name in which the act directs the penalty to be recovered.
 

 Per CuriaM. Judgment affirmed.