## JOSEPH J. HANKS

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Dram-shops—Sale of Liquor—Criminal Prosecution for—License Issued under Void Ordinance as Defense.*

Where a license to sell intoxicating liquors is issued under an ordinance, regular on its face, purporting to have been passed by the board of trustees of the village, and signed by the village president and duly published, such license, when accepted and paid for in good faith, is a defense against a criminal prosecution for selling liquor, although the ordinance in question was not legally passed.

### [Opinion filed May 21, 1891.]

APPEAL from the Circuit Court of Warren County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. GRIER & STEWART and CHARLES A. McLAUGHLIN, for appellant.

Messrs. EDGAR MACDILL, State's Attorney, and KIRKPATRICK & ALEXANDER, for appellees.

C. B. SMITH, P. J. This was an indictment against appellant under the "Dram-shop" Act. He was charged with selling intoxicating liquors in less quantities than one gallon. The defendant pleaded not guilty, and waived a jury, and a trial was had before the court by agreement, and the defendant was found guilty on sixteen counts, and fined $20 on each count. From that judgment appellant prosecutes this appeal. There is no controversy about the facts. The following stipulation was made in the record, viz. :

"Stipulation that record should show that defendant admitted sixteen sales at time charged in indictment, and that sales were of liquor to be drank on premises, and were made in Roseville, Warren Co., Ills. That Roseville is a village incor-

porated under general law, and that sales were made in less quantities than one gallon and were intoxicating liquors."

It will be seen by this stipulation that the defendant admits making the sale as alleged in the indictment, but he insists that he had a lawful right to sell by virtue of a license duly issued to him by the corporate authorities of the village of Roseville. It was not denied by the people that the defendant did have a license in all respects formal, and that he had filed the bonds required by the village and the statute. The contention of the people is that the license was void. It appears that the village of Roseville attempted to exercise the power delegated to it, and on May 5, 1890, passed an ordinance providing for the granting of licenses for the sale of intoxicating liquors within the corporate limits of the village, which ordinance was duly signed by the president of the village board, attested by the clerk, copied into the book of ordinances of the village, and on May 9, 1890, duly published in the Roseville Times, a newspaper published and circulated in that village. The ordinance was regular on its face, purported to have been passed by the board of trustees of the village, and signed by the president; was published by authority, and was, at least *prima facie*, a valid ordinance and a valid law. The defendant made application for a license to keep a "dram-shop" under said ordinance, tendered his bonds to the village and State, which were accepted by the village authorities and are still retained by them; he paid the required license fee, which is still in the hands of the village, and thereupon there was issued to him under the hand of the president and clerk of the village board and under the corporate seal of the village, a license to keep a "dram-shop" within the village. He in good faith went into business under this license, and for sales made under it he is indicted, and has been found guilty by the court below on the ground that the ordinance was invalid, the license issued under it a nullity, and the sales made under the license illegal and criminal without regard to their intent.

It appeared from the evidence that the ordinance passed by the village authorizing the issuing of licenses to keep a dram-shop was not legally passed, it lacking one element required by law, when it was upon its passage, to make it a valid ordi-

Hanks v. The People.

nance. But this objection was not made to the validity of the ordinance by any of the village authorities, at the time, nor since that, so far as we are informed from this record. The ordinance was duly recorded, signed by the proper officers and duly published for the required time. It was under this ordinance that the license was issued to appellant, and it was under and by virtue of the license so issued that he sold the liquor for which he was indicted and convicted. There is no proof in the record to show that appellant had any knowledge of any infirmity or illegality in the ordinance, or that he was acting in collusion with the city officials to get a license, without being lawfully entitled to it. We find nothing in the record to impeach the good faith of appellant in taking out and paying for the license in question.

The only question presented, therefore, for our consideration in this record, is whether, under the admitted facts in the case, the appellant was criminally liable for selling intoxicating liquors. We think appellant was not liable. He had the license required by law and had executed his bonds, and so far as it was in his power he had complied with the law, and honestly supposed he had a lawful right to make the sales. He had a right to presume that the village authorities had followed the law in passing the ordinance in question, and publishing it. He was under no obligation to examine the records of the proceeding of the village board, and see whether they had followed the law in passing the ordinance. As well require every citizen of the State to know at his peril, or go and examine the journals of the General Assembly, to see whether the Constitution had been complied with in the enactment of laws before he could act under a law duly published in the statutes of the State, as to require every citizen of a city or village to go and examine the original proceeding of the council before he could act under an ordinance. We think it would be most unreasonable and burdensome to impose such duty upon the citizen in either case; and so it was held in The People ex rel. v. Loewenthal, 93 Ill. 191, that in the case of legislative enactments the citizen might rely upon and presume that the laws duly passed and published,

and purporting to have been duly passed, were legal and valid enactments. We think there is no distinction in principle between the rule being applicable alike to both cases. We do not hold, or intend to be understood as holding, that by indulging this presumption as to the regularity of the passage of an ordinance, that parties are thereby excused from being chargeable with a knowledge of the law in all cases, whether arising under an ordinance or statute. The presumption indulged of the regularity of the acts of the village council relates to the existence only of a fact, and not as to the meaning or requirement of an ordinance or law in actual existence. We think the evidence here entirely fails to show any criminal conduct on the part of appellant, or any purpose to violate the law, or that he had any knowledge that he was violating it; and we think it would be a violation of every principle of the criminal law to convict a man under such circumstances. The village took appellant's money for his license, and have kept it, and never offered to return it.

In the case of The People v. Mettler, opinions filed at Ottawa, November 26, 1890, the defendant was indicted for cutting down certain trees in a cemetery in violation of the statute and appropriating them to his own use. The cemetery was incorporated and under the control of a board of directors, who only could act in their corporate capacity. The defendant alleged in his defense that he did the act under the advice and consent of the individual members of the board, and for the purpose of improving and bettering the condition of the cemetery. It was objected that he could not lawfully get the consent of the corporation to do the act complained of, by mere individual action of separate members of the board, and he was not allowed to show on his trial that he acted upon their advice and in good faith without intending to violate the laws or do any wrong. On appeal to the Supreme Court it was held the evidence was competent to show the absence of a criminal purpose, and to show that he supposed in good faith he was justified and authorized to do what he did in fact do, although it might afterward appear that the parties who directed him to cut the trees were not

acting within the requirements of the law so as to confer legal authority on Mettler to cut the trees.

We think the principle announced in that case applies to and covers the one at bar. We are therefore of opinion that the conviction of appellant was wrong, and that the finding and judgment of the court was contrary to the evidence and the law, and the judgment will be reversed and remanded. ,

*Reversed and remanded.*